2017-1821 Procopio v. Wilkie Yes, let me save it. Thank you very much. Thank you. It's here from Mr. Breskin. Good morning. May it please the Court. Mr. Breskin, if a U.S. naval vessel sails within 12 miles of the shoreline of the Republic of Vietnam, the Democratic Republic of Vietnam, is it the decision of the United States that that vessel is subject to the legal jurisdiction of the Democratic Republic of Vietnam? I don't know an exact answer, Your Honor. I think the question stems, though, from combining both defining the reach of the sovereignty of a nation with defining what the terms of the Agent Orange Act meant. When Congress passed the Agent Orange Act, they were not seeking... Well, no, you can answer my question whether that ship is in Vietnam or not. I believe it is considered in Vietnam for purposes of maritime jurisdiction and other purposes of international law. Right. The Haas Court addressed this same argument in determining whether Congress's intent was clear enough. They looked at the legislative history. Mr. Haas suggested that there was a treaty that defined the sovereignty of Vietnam as including its territorial waters, and the Court said there's no indication that Congress chose any of these competing methods for defining the phrase Republic of Vietnam in the Agent Orange Act, and therefore it moved on to Step 2. But if the Haas Court was incorrect, it may be precedential, that's a different question, but if it was incorrect about Step 1, it never needed to get to Step 2. If that statute is clear, that in Vietnam means within the legal territory of Vietnam, including its offshore... If this Court were to believe that it was clear, I believe it would need to overrule Haas en banc. Why? Because Haas determined that that statutory phrase was ambiguous. Haas determined the statutory phrase was ambiguous, but it expressly indicated that it did not take into account the pro-veteran canon, and that would be taken into account in the determination of whether it's ambiguous or not. All canons are taken into account in Step 1, not Step 2 of Chevron. But Step 1 of Chevron is looking at whether or not Congress's intent is clear from the language of the statute itself. So I'm not sure exactly where the pro-veteran canon would come in to say that a language that's otherwise ambiguous becomes unambiguous. What an interesting argument you could make on behalf of drug smugglers who are apprehended within 12 miles of the United States shoreline. Except that if there is an indication in the laws that govern the jurisdiction of the statute of the United States, then that would be clearly applicable there. Here, the statute itself was not seeking to define Vietnam's jurisdictional reach or the powers that Vietnam would have over its waters. It was simply seeking to define which veterans can use presumption of exposure to herbicides. And that was based not on the sovereignty of the nation, which is completely unrelated to... Can you help us think through this pro-veteran claimant canon? I mean, I've seen the Supreme Court has referred to it as a canon of construction, which suggests that it's some tool for interpreting a statute. And so now it's one more tool of the many tools you use to try to understand the meaning of a statute. And so what is the government's view of how that applies in the context of statutes relating to veterans' benefits? Are you saying that it really doesn't have any role to play? No, I think it's wrapped up into the Chevron Step 2 review of the agency's interpretation of the statute. But I would assume you would agree that opinions like Sears, Terry, Guerra, etc., all say that the pro-veteran claimant canon cannot override a reasonable agency interpretation of an ambiguous statute. Correct. So then the pro-veteran claimant canon really has no role if it doesn't have any role in Step 1, and I guess we've already said it has no role in Step 2. So what role does it really have? Well, the way the Haas court on Banks, in denying the rehearing on Banks, seemed to view it was it is something to factor in into determining whether or not how the agency has defined an ambiguous phrase is reasonable. They found that the Haas interpretation, that the VA's interpretation of the ambiguous statutory phrase was owed deference and was reasonable and was not overcome by the pro-claimant canon because it would not necessarily result in a pro-veteran result in every instance. And they noted that the VA had already interpreted the ambiguous statutory language in a pro-veteran manner. Does your denial in Banks prohibit us from applying a canon to determine the validity in Step 1? No, it's not binding on this court in the same way that the Haas panel decision is, but I think it is helpful and instructive that the court recognized it was waived, but then said we're nevertheless going to look at this and determine whether or not it would have had an effect on the way we... So do you understand the denial of rehearing in Haas, that opinion, to be considering the pro-veteran claimant canon in the context of Step 2 as to whether the VA's choice of interpreting the statute was reasonable? Yes, Your Honor. Okay, and then ultimately it said it was reasonable or it was going to defer to it, and the fact that there was this canon didn't override it, although I guess you're saying that it still gets some consideration in the context of the overall question of reasonableness of the VA statute. I believe that's correct, and I think that's what the... Okay, but now that gets us back to Haas, nor any other case in this kind of context with VA benefit statutes ever expressly talking about this canon in the context of what we can just call Step 1 in trying to figure out whether the statute is clear, whether congressional intent is clear. As I stand here, I'm not aware of a case where the pro-claimant canon was used to take language that was otherwise viewed as ambiguous and render it unambiguous in favor of the veteran, and I would suggest that that use of it doesn't necessarily make sense because the VA is in a position where they're interpreting ambiguous statutory phrases, and they are the experts at doing so, and they're empowered to do so, and so they're looking at what are the consequences of the different interpretations that we can give to statutory language, and so I think it is much better in the first instance to give the VA the opportunity to take that into account when it's considering how to interpret an ambiguous statutory phrase than having the court do so in the first instance. If it's ambiguous. On the other hand, if we look at the language in Vietnam and we say, well, it could be ambiguous or it could be perfectly straightforward, and by the way, we have a canon of statutory construction which tells us it should be looked at as unambiguous, we stop right there, don't we? You can. I mean, in some ways, that is what the Henderson court did. It said, you know, we find the plain meaning of this rule to be X. Oh, and by the way, this is the courts with the proclaiming canon, but they didn't use it as the tool of construction to take something they viewed as ambiguous. So I think to apply the proclaiming canon here, the court would need to disagree with the Haas panel in that the language of section 1116 was ambiguous. I think we agree with you that the canon is limited to step 2. Correct, Your Honor. If we find the canon is applicable at step 1, then Haas doesn't bind this court, does it? I don't know the answer to that, Your Honor. Yes, you do. You just don't want to say it. Well, I mean, I haven't thought through that hypothetical because... Okay, well, think through it now. You've got 6 minutes and 35 seconds. I'd like the government's position on whether or not if step 1 must consider pro-veteran canon, if that's where we find it applies and not in step 2, then did the Haas court decide the statute was ambiguous and does that bind us under those circumstances? I suppose the panel decision would not, no, Your Honor. But I do think that the court should take into account that the same panel, in a request for rehearing, noted that it would not have changed the result of their review, both with respect to 1116 or the VA's interpretation. The only question that Judge Moore posed was binding or not binding. That's an either-or, and you've already given your answer. Perhaps, Your Honor. But now I'm moving on to the next step, which is what would the court do with that predicate determination? And I would suggest that, to some extent, that issue hasn't been very well developed in the briefing here because Mr. Procopio was arguing that Haas, in general, should be limited to its facts because it didn't apply the pro-clinic canon. But the extent to which it fits into Chevron step 1 or Chevron step 2 is admittedly something I haven't spent a sufficient amount of time investigating to answer the court's questions. I think we should ask for additional briefing on that. I think if the court was thinking about making a determination that Haas does not bind the panel because the pro-clinic canon should apply at step 1 and that would make Haas non-binding, then yes, Your Honor. But he argued that in his blue brief. Let me show you the places where he did. You had an opportunity to respond to that exact argument. Your Honor. And your response was it applies in step 2. My response to the question here, what he was saying was that Haas, in general, does not bind this court because Henderson reaffirmed the pro-clinic canon that wasn't applied. No, he said Haas doesn't bind this court because it didn't take into account the pro-clinic canon when it made its determination. Right, but its entire determination, not specifically at step 1 of the Chevron analysis. That's the more granular point that I think, if the court were inclined to rule that way, the court might benefit from some additional briefing on that question. What he was arguing is that Henderson, in effect, overrules Sears and means that if there's any ambiguity in a statute that the agency is per se unreasonable in making an interpretation that can be viewed as not being pro-veteran in every instance. Can you, I mean, I get the feeling we might come back to this, but let me ask a related question, which is my understanding of this canon, the veteran canon. The origins of it is in this notion that this is like a remedial statute and we want to give liberal construction to remedial statutes, which is a doctrine that's used and applied to other statutes that are deemed to be remedial. And I guess I'm wondering, do you have a view of what that actually means and how it actually operates in statutory construction, this notion that we give liberal constructions to remedial statutes? How does that actually work when we're trying to use that doctrine with all the other traditional tools of statutory construction? I think if you are looking at whether or not an agency has reasonably interpreted an ambiguous statutory phrase, you have to look at whether the agency's view of it is proclaimant in some manner, not in every instance. I mean, this Court has already held in Sears just because it doesn't result in the veteran getting benefits. You're immediately putting my question in the context of an interpretation that an agency does, and I'm wondering if that's really necessarily the context. It's really more a question of maybe the courts. Maybe the courts have to figure out what the meaning of a statutory term is. In that context, what do we do? How do we apply this so-called liberal construction of remedial statutes? There's a few different ways I've thought. One is maybe their statute is not clear, and there are a handful of reasonable options of what this rather unclear statute means. And because of the remedial nature of the statute, we want to give a liberal construction to it, and so therefore we should select the interpretation that's most beneficial to the largest class of the parties that were intended to be benefited by the statute. Another way of looking at this doctrine is, well, the statute is not clear, but it's close. Maybe it really is leaning in hard in one direction, and it turns out that direction benefits the intended beneficiaries, and so therefore we will put this cherry on top, this liberal construction doctrine, and then confirm that that's in fact what the term, the perhaps unclear but almost clear term means. What is the government's view on how to understand this doctrine? My view of the two ways you said it are both reasonable, except that the premise of them is that it should be the court initially interpreting what it is Congress meant. If Congress's language was clear, then there wouldn't be a question of what Congress meant when it said these words. It would be clear on its face. One can determine that the statute is clear using canons of statutory construction. That's basic Southerland stuff. You're not suggesting, now let's put it in the context of Chevron. Chevron's step one, that the agencies get to control step one. That's a court responsibility. That is a court responsibility. Okay then, so let's move on. What I would suggest is that the court making a determination without the VA's input whatsoever on what is pro-veteran is not necessarily the best use of that tool, which is why I think the Haas court used it to look at what the VA had done when it interpreted the statutory language. Because what may appear to be the pro-veteran on just a reading of a congressional phrase may not necessarily be so. And it's clear that where there's an ambiguity, the agency has the power to fill gaps and interpret that. And so I would suggest that although it is clear that tools of statutory construction can be used at Chevron step one to try and determine clear intent, the VA benefit structure and statute are meant to be interpreted by, where they're vague, meant to be interpreted by the VA and then reviewed by this court. Congress has been clear when it wants courts to, in the first instance, determine the best way to interpret a phrase. In the United States v. California case that Mr. Procopio cites regarding the Submerged Lands Act in 1965, the Supreme Court made clear that the statute told the court to determine how to define inland waterways. But without that sort of clear indication that it should be up to the courts to define an otherwise ambiguous phrase, the normal course, which I think makes sense in the veteran system, is for the VA to do so and then for that to be reviewed. I think I'm over my time. No, it's okay. Thank you, Mr. Breskin. It's very helpful. Mr. Wells, do you have some rebuttal time? Thank you, Your Honors, and please, the court. One of the interesting things that comes out of this whole question of whether it's a step one, the pro-veteran canon, the step one or step two, actually, as you can go back to the Sears case, which talks about its applicability onto the veterans' benefits legislation, whether or not it conforms with the spirit of the veterans' benefits legislation, and that was Sears at 1332. I think that moves it definitely and completely into the step one arena because you have to compare it about what the intent was and what is the intent of the veterans' legislation. It's to take care of the veterans. Part of the problem we've had is this was supposed to be a non-adversarial system. It was a system to provide benefits for those who went out there and were hurt in the line of duty, and we've gotten away from that. We've gotten too esoteric and too legalistic, which is probably why we're here today. Applying that pro-veterans canon in step one, as I think the Supreme Court so desired and even as Sears admitted, and by the way, that's on page 30 of my brief if anybody would like to look at it, shows that we definitely have got to provide these folks this benefit and to take a very liberal and reasonable approach. When you talk about reasonableness, let's talk about that for just a second. I realize that's kind of getting a little into a more advanced step, but the whole basis of Chevron, the whole basis of Sears, the whole basis of the law is that the agency's approach has to be reasonable. Mr. Ruskin talked about VA experts, but one thing he has never brought forth and the VA has never brought forth and is not in the record is any expert information to basically refute what we're saying. We've brought in hydrologists, we've brought in military officers, we've brought in a number of people, and all of the evidence, not the preponderance, not clear and convincing, all of the evidence goes on to the conclusion that these folks were exposed and the Veterans Benefits Legislation was set up to take care of people who were exposed. One other thing. Is it your view that jet fighter pilots that fly over the landmass or the territorial waters would also be serving in the Republic of Vietnam? No, and I think we may have addressed that because there was B-52 pilots, for example, that would come from Guam, fly over and attack North Vietnam 30,000 feet and go back, and no, certainly they would not have been exposed and certainly they would not have the problem. Now, if there was a jet pilot who over-sacked... I'm wondering why, I mean, I'm now going back to your statutory interpretation question, which you were advancing that the territorial waters are necessarily part of Vietnam. Why, just thinking about the statute and understanding the statute of what does it mean to be in Vietnam, why wouldn't the airspace above the landmass also be in Vietnam? Well, not on North Vietnam, certainly not, but on South Vietnam there is a strong possibility that if you apply that to the strict construction of that pro-veterans canon, we won't deny that. Normally what we've been doing with aviators is a direct exposure theory. If they flew in through the clouds in South Vietnam or landed in South Vietnam. There's international law that talks about how territorial waters are part of the sovereign, but isn't the airspace also? The airspace is also part of the sovereignty, yes. So then, I guess, to follow through on your conception of the statutory term, why wouldn't, just talking out loud here, why wouldn't a service member that was flying through the airspace also be included? The airspace of the Republic of Vietnam would be, not the Democratic Republic of Vietnam up there, but within the Republic of Vietnam it would. But, you know, one of the other interesting things, and I'm sorry I'm out of time, but if I could just make this one last point with the Court's indulgence. We don't really have a problem with the statute. We don't have a problem with the CFR. We don't even really have a problem with General Counsel's opinion. They all say within the borders of Vietnam. This interpretation came out in an M21 manual, and as this Court has found in Gray most recently, we can't touch the M21 manual on any type of Section 502. We believe that the plain reading of the statute and the Code of Federal Regulations and the General Counsel's opinion, especially when applying these canons, shows that territorial seas and probably the airspace were within the Republic of Vietnam and should be included. Thank you, Your Honors. I'm sorry I ran over time.